# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Derrick Gilliard,<br><br>　　Plaintiff,<br><br>vs.<br><br>Nancy Berryhill, Acting Commissioner<br>of Social Security,<br><br>　　Defendant. | Civil Action No. 8:17-1435-RMG<br><br>**ORDER** |

Plaintiff has brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 DSC, this matter was referred to a United States Magistrate Judge for pre-trial handling. The Magistrate Judge issued a Report and Recommendation ("R & R") on August 13, 2018, recommending that the Court reverse the decision of the Commissioner because there was not substantial evidence to support the various findings of the Administrative Law Judge ("ALJ") related to the denial of disability benefits under Listing 12.05(c). (Dkt. No. 19). The Magistrate Judge recommended that the case be remanded to the agency for further action consistent with the decision. The Commissioner has advised the Court she does not intend to file objections to the R & R. (Dkt. No. 21). The Court adopts the entirety of the R & R, except the recommended remedy of the Magistrate Judge, and awards benefits.

## Legal Standard

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo* determination of those portions of the R & R to which specific objection is made. The Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge. 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. The Act provides that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes *de novo* review of the factual circumstances that substitutes the Court's findings of fact for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971).

Although the federal court's review role is a limited one, "it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). Further, the Commissioner's findings of fact are not binding if they were based upon the application of an improper legal standard. *Coffman v. Bowen*, 829 F.2d 514, 519 (4th Cir. 1987).

Under the regulations of the Social Security Administration, the Commissioner is obligated to consider all medical evidence and the opinions of medical sources, including treating physicians. 20 C.F.R. § 404.1545. The regulation, known as the "Treating Physician Rule,"

imposes a duty on the Commissioner to "evaluate every medical opinion we receive." *Id.* § 404.1527(c). The Commissioner "[g]enerally . . . give[s] more weight to opinions from . . . treating sources" based on the view that "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Id.* § 404.1527(c)(2). Further, the Commissioner "[g]enerally . . . give[s] more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined [the claimant]." *Id.* § 404.1527(c)(1).

Under some circumstances, the opinions of the treating physicians are to be accorded controlling weight. Even where the opinions of the treating physicians of the claimant are not accorded controlling weight, the Commissioner is obligated to weigh those opinions in light of a broad range of specifically identified factors, including the examining relationship, the nature and extent of the treatment relationship, support for the opinions in the medical record, consistency, and whether the treating physician is a specialist. *Id.* §§ 404.1527(c)(1)-(5). The Commissioner is obligated to weigh the findings and opinions of treating physicians and to give "good reasons" in the written decision for the weight given to a treating source's opinions. SSR 96-2P, 61 Fed. Reg. 34490, 34492 (July 2, 1996).

The Social Security Administration has adopted regulations relating to mental retardation as a basis for Social Security disability. Relevant to this matter is Listing 12.05(c), which sets forth three requirements for establishing mental retardation as a basis for Social Security disability:

    1.    "Significantly subaverage general intellectual functioning with deficits

in adaptive functioning initially manifested during the developmental period; i.e. the evidence demonstrates or supports onset of the impairment before age 22;"

2. "A valid verbal, performance or full scale IQ of 60 through 70;"

3. "A physical or mental impairment imposing an additional and significant work-related limitation on function."

20 C.F.R. § 404, Subpart P, Appendix 1, 12.05(c).[1]

A claimant can demonstrate "deficits in adaptive functioning" in a broad range of ways, including low reading level, dropping out of school, and other academic deficiencies. This can also be shown by deficiencies in communication skills, continuing to live with parents as an adult, impaired social and interpersonal skills, and impairments in work, leisure and safety-related activities. Proof of these deficiencies before age 22 is commonly shown through weak school performance. *See Jackson v. Astrue*, 467 Fed. Appx. 214, 217-18 (4th Cir. 2012).

The presence of an IQ test result in the record between 60 and 70 is not automatically binding on the ALJ, but any rejection of IQ testing results must be based on adequate findings. *See Hancock v. Astrue*, 667 F.3d 470, 474 (4th Cir. 2012); *Harris v. Berryhill*, 2018 WL 1187584 at *5 (M.D. N.C. 2018). Further, where diagnostic testing and diagnoses have been made by a treating or examining medical provider, any rejection of such findings and conclusions must meet the standards of the Treating Physician Rule. § 404.1527(c).

The requirement under 12.05(c) that the claimant demonstrate "an additional and

---

[1] This regulation was amended as of January 17, 2017 for cases filed on or after that date. Since this matter was filed in 2012, the standard for establishing mental retardation is the regulation set forth above. 81 Fed. Reg. 66138-01, 2016 WL 5341732 (September 26, 2016).

significant work limitation on function" can be satisfied by an ALJ finding that the claimant suffers from one or more severe impairments or is unable to perform prior relevant work. Further, evidence of difficulties in "social function, concentration, persistence, and pace" support a finding of "an additional and significant work-related limitation on function" under 12.05(c). *Jackson v. Astrue*, 467 Fed. Appx. at 217. *See also Luckey v. U.S. Dep't of Health and Human Services*, 890 F.2d 666, 669 (4th Cir. 1989); *Kennedy v. Heckler*, 739 F.2d 168, 171 (4th Cir. 1984).

## Discussion

The ALJ found that the claimant failed to meet any of the requirements of Listing 12.05(c). This included the alleged absence of a valid IQ score between 60 and 70, deficits in adaptive functioning before age 22, and any mental or physical impairment imposing an additional and significant work-related limitation on function. Tr. 27. As the Magistrate Judge so ably set forth in the R & R, these findings are unsupported by substantial evidence in the record. The Court will address each of the three prongs of 12.05(c) below.

### A. A Valid IQ Score of 60 to 70

A consulting examiner, Gene J. Sausser, Ph.D., conducted a psychological examination of the claimant on April 9, 2013. This included administration of the Wechsler Adult Intelligence Scale-Fourth Edition (WAIS-IV), which indicated that Plaintiff's Full Scale IQ was 63. This included findings that his Verbal Score was 63 and his Working Memory Score was 66. Dr. Sausser found that this result fell within the lowest 1 percentile of the adult population, and he diagnosed the claimant with mild mental retardation. Tr. 441, 443. He also referenced in his report other findings consistent with these test results, including a test of reading, spelling, math and computation that placed Plaintiff's grade equivalent between 3.2 and 3.7, with Dr. Sausser observing that this test result "indicates only very elementary knowledge of reading, spelling, and

arithmetic." Tr. 412.

The ALJ does not make any specific finding regarding the validity of the test results or question Dr. Sausser's testing methods or conclusions. The ALJ does not utilize the provisions of §404.1527(c) to justify the rejection of Dr. Sausser's findings or diagnoses. As the Magistrate Judge correctly noted, there is not substantial evidence to support the finding that Plaintiff did not have a valid IQ score between 60 and 70.

**B.    Deficits in Adaptive Functioning Before Age 22**

The record demonstrates that Plaintiff failed first grade and dropped out of school after ninth grade. When asked to compute a simple math problem, he attempted to count with his fingers. He has lived his entire life with his mother and does no cooking, laundry or yard work. Tr. 426, 427, 439, 440. The ALJ recognized that he had impairments in social functioning and his academic performance did not exceed the third grade level. Tr. 30, 31. As the Magistrate Judge observed, the ALJ's finding regarding the absence of deficits in adaptive functioning manifesting before age 22 is not supported by substantial evidence.

**C.    The Presence of an Additional and Significant Work-related Limitation on Function**

The ALJ identified a number of severe work-related impairments, including degenerative disc disease, headaches, and post-concussion/cerebral trauma. Tr. 24. The ALJ further found that Plaintiff could not perform his prior relevant work because of these severe impairments and had "moderate difficulties" with concentration, persistence, and pace. Tr. 26. The ALJ limited Plaintiff to employment that did not have contact with the general public or required team-type interaction with co-workers because of his impaired social skills and isolation. Tr. 27, 31. Again, the finding that Plaintiff lacked significant work-related limitations on function is not supported by

substantial evidence.

## Conclusion

The ALJ's findings that Plaintiff did not meet the three prongs for Listing 12.05(c) are oddly discordant with the record and the settled case law of this Circuit. The Plaintiff plainly had a long history of deficits of adaptive functioning dating back to his childhood, a current IQ score between 60 and 70 performed by a licensed consulting psychologist, and multiple additional and significant work-related limitations on function found by the ALJ. The record plainly establishes not just the absence of substantial evidence to support the ALJ's findings, but the presence of overwhelming evidence meeting each of the three prongs of Listing 12.05(c). The record demonstrates that Plaintiff is entitled to disability benefits under Listing 12.05(c) as a matter of law.

## Remedy

This Court's general practice is to remand decisions to the Commissioner for further administrative action, but it is well settled that the District Court has the authority to award benefits. 42 U.S.C. § 405(g). An award of benefits by the District Court is appropriate where the record is fully developed and it is clear the Commissioner would be required to award benefits on remand. *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004); *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001); *Williams v. Comm'r of Soc. Sec.*, 104 F. Supp. 2d 719, 721 (E.D. Mich. 2000). This is particularly true where there has been a significant lapse of time in the administrative processing of the claim. *Holohan*, 246 F.3d at 1210; *Podedworny v. Harris*, 745 F.2d 210, 223 (3rd Cir. 1984). This application for disability benefits was filed in November 2012, now approaching six years ago. The time to award Plaintiff the benefits he is undoubtedly

entitled has now arrived.[2]

## Conclusion

Based on the foregoing, the Court adopts the R & R of the Magistrate Judge as the order of this Court, except regarding the remedy. The decision of the Commissioner is reversed, pursuant to Sentence Four of 42 U.S.C. § 405(g), and remanded to the agency with the direction to award disability insurance benefits to the Plaintiff's from the onset date of December 16, 2011.

AND IT IS SO ORDERED.

Richard Mark Gergel
United States District Judge

August 28, 2018
Charleston, South Carolina

---

[2] Dr. Sausser recommended that Plaintiff be provided a payee for his Social Security benefits, which appears to be an appropriate recommendation due to his limited capacity to read and calculate. Tr. 443.